# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

BRIAN HUTCHCROFT-DARLING and
FRANK MASSINGHAM,

    Plaintiffs,

vs.

JUSTIN BOECKER; JERRY A. VANDER SANDEN; CITY OF CEDAR RAPIDS; and LINN COUNTY, IOWA;

    Defendants.

No. C19-0011-LTS

**ORDER**

_____

## I. INTRODUCTION

This case is before me on a motion (Doc. No. 8) to dismiss by defendants Jerry Vander Sanden and Linn County, Iowa. Plaintiffs Brian Hutchcroft-Darling (Darling) and Frank Massingham (Massingham) have filed a resistance (Doc. No. 10). I find that oral argument is not necessary. *See* Local Rule 7(c).

## II. FACTUAL ALLEGATIONS

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 on February 1, 2019. Doc. No. 1 at 1. They allege that Darling is the owner of Hutch's Property, L.L.C., which owns three duplexes in Cedar Rapids, Iowa. Doc. No. 1 at 3. Massingham is an employee of Hutch's Property. Plaintiffs allege that they were falsely accused and charged with theft of a tenant's washer and dryer. The tenant, Andrea Bowlay-Williams (Bowlay), reported the theft to the Cedar Rapids Police Department on September 17, 2017. *Id.* Defendant Justin Boecker, a police officer with the Cedar Rapids Police Department, investigated the complaint by speaking to four witnesses at the apartment complex. *Id.* at 4.

Plaintiffs allege that on September 19, 2017, Vander Sanden (the elected County Attorney for Linn County) issued two sworn complaints[1] alleging that witnesses had observed plaintiffs steal a washer and dryer from a tenant valued between $1,000 and $10,000. *Id.* at 10. Plaintiffs allege that Vander Sanden never talked with any of the alleged witnesses and merely accepted Boecker's account of the incident. They contend that had Vander Sanden conducted his own investigation beyond "rubber stamping" Boecker's police report, he would have determined that no probable cause existed and that Boecker had misrepresented his interviews with the alleged witnesses. *Id.* Plaintiffs state Boecker knew when he filed his report and requested formal charges that no probable cause existed for theft charges against plaintiffs. They contend Boecker never attempted to enter the apartment duplex to see if the washer and dryer were present.

Warrants were issued for plaintiffs' arrests on September 20, 2017. *Id.* at 11. They were arrested and detained until they could post bail. On February 28, 2018, Vander Sanden filed a motion to dismiss the charges, stating "the witnesses upon which the State relied in filing charges" had "retracted their earlier statements (sic) to police." *Id.* Due to the witnesses' "recantations," Vander Sanden determined there was insufficient evidence to proceed with the charges. *Id.* (citing Doc. No. 1-3). Plaintiffs allege that Vander Sanden's statements to the court about witness "retractions" and "recantations" were made in reckless disregard of the truth because no such "retractions" or "recantations" were ever made by any of the witnesses. They allege the witnesses never made incriminating statements against plaintiffs in the first place.

Plaintiffs allege the following claims against Vander Sanden (in his individual and official capacities) and Linn County:

- Violation of Clearly Established Civil Rights Guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 – False Arrest/Arrest Without Probable Cause

---

[1] The criminal complaints were not attached to plaintiffs' complaint in this case and they are not otherwise in the record.

2

against Defendants Boecker and Vander Sanden in their individual and official capacities and Cedar Rapids and Linn County

- False Arrest Claim (Common Law) – Against Defendants Boecker, Vander Sanden including conspiracy and respondeat superior liability against Cedar Rapids and Linn County, Iowa

- Malicious Prosecution Claim – Against Defendants Boecker, Vander Sanden including conspiracy and respondeat superior liability against Cedar Rapids and Linn County, Iowa

*Id.* at 12-17.

### III. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

3

> *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for

4

summary judgment. *Id.* These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so. When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV. ANALYSIS

### A. *Claims Against Vander Sanden*

Vander Sanden argues the claims against him must be dismissed because he is entitled to absolute immunity in deciding whether to prosecute and it was not his duty to investigate. He argues that he is entitled to use his professional discretion in determining whether to pursue criminal charges based on investigation by law enforcement. Doc. No. 8-1 at 6 (citing *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016)). Plaintiffs argue that a prosecutor is not entitled to absolute immunity when his or her conduct is administrative or investigative in nature. Doc. No. 19 at 3 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). They claim that Vander Sanden was swearing

5

to the truth of the allegations in the complaint, making him more of a witness than an advocate entitled to immunity.

Prosecutors are entitled to absolute immunity from liability in a suit for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case"); *see also Kalina v. Fletcher*, 522 U.S. 118, 128-29 (1997) (prosecutors have absolute immunity for conduct in the preparation and filing of a motion for an arrest warrant unless he acts as a witness); *Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir. 1987) ("The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction."); *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government."). Prosecutors are entitled to qualified immunity for administrative or investigative functions normally performed by a police officer. *Burns v. Reed*, 500 U.S. 478, 493 (1991). Examples of such actions include authorizing a warrantless wiretap, *see Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985), giving legal advice to the police, *see Burns*, 500 U.S. at 495, and determining whether a bootprint at the scene of the crime had been made by petitioner's foot, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 274-75 (1993).

Whether prosecutorial conduct is "intimately associated with the judicial phase of the criminal process" requires "a focus[] on the conduct for which immunity is claimed, not the harm that the conduct may have caused or the question whether it was lawful." *Buckley*, 509 U.S. at 271. In *Buckley*, the Supreme Court divided the functions of the prosecutor as follows:

6

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973), *cert. denied* 415 U.S. 917 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." *Id.* at 608-609.

509 U.S. at 273-74. Importantly, the prosecutor's role is evaluated from the time it is performed. *Id.* at 276 ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation for a possible trial.'").

Plaintiffs allege the following with regard to Vander Sanden's actions:

45. On September 19, 2017, Vander Sande[n], in two sworn complaints, swore that witnesses observed Darling and Massingham *steal* Bowlay's washer and dryer valued between $1,000.00 and $10,000.00.

46. Vander Sanden made his sworn statements about witnesses ***observing*** Darling and Massingham ***steal*** the washer and dryer in reckless disregard for the truth and pursuant to a policy whereby Linn County agreed to swear to the truth of statements made by law enforcement officers regardless of whether or not the statements were, in fact, true. No independent or unbiased investigation of the truth of the inculpatory statements made in the complaint was ever undertaken by Vander Sanden or Linn County.

47. Despite swearing to the Court that witnesses that had ***observed*** the alleged theft, Vander Sanden never talked with any of the alleged witnesses and he instead recklessly "rubber stamped" Boecker's false claims against Darling and Massingham.

48. Had Vander Sanden conducted any type of investigation that went beyond merely taking "rubber stamping" Boecker's police report by

7

swearing to the facts therein as indisputably true and correct, he would have known that no probable cause existed to charge either Darling or Massingham and he would have known that Boecker had misrepresented his interviews with the alleged witnesses.

Doc. No. 1 at 10-11 (emphasis in original).

As mentioned above, neither party has submitted a copy of the sworn complaints. As such, at this stage of the case I cannot determine what, exactly, Vander Sanden was swearing to when he signed them. In any event, I must accept plaintiffs' allegations as true for purposes of a motion to dismiss under Rule 12(b)(6). On one hand, "[s]igning and filing a complaint or information, including making the requisite oath or affirmation, are acts 'intimately associated with the judicial phase of the criminal process' and functions 'to which the reasons for absolute immunity apply with full force.'" *Burr v. City of Cedar Rapids*, 286 N.W.2d 393, 396 (Iowa 1979). On the other hand, "[t]estifying about facts is the function of the witness, not of the lawyer." *Kalina*, 522 U.S. at 130. Based on plaintiffs' allegations, Vander Sanden's sworn statements are closer to a witness function, as described in *Kalina*, rather than an advocate function entitling him to absolute immunity. In *Kalina*, the Court explained:

> [P]etitioner argues that the execution of the certificate was just one incident in a presentation that, viewed as a whole, was the work of an advocate and was integral to the initiation of the prosecution. That characterization is appropriate for her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-causing finding, her decision to file charges, and her presentation of the information and the motion to the court. Each of those matters involved the exercise of professional judgment; indeed, even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate. But that judgment could not affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. *Even when the person who makes the constitutionally required "Oath or affirmation" is a*

8

> *lawyer, the only function that she performs in giving sworn testimony is that of a witness.*

*Kalina*, 522 U.S. at 130-31 (emphasis added). *See also Humphrey v. Sapp*, 462 F. App'x 528, 533 (6th Cir. 2012) (concluding assertions made in social worker's affidavits restating evidence gathered from other witnesses were analogous to those made by prosecutor in *Kalina*).

Here, plaintiffs are not alleging that Vander Sanden was merely deciding whether there was probable cause to bring charges against plaintiffs based on the information provided by Boecker. Rather, they are alleging that Vander Sanden swore to the truthfulness of the factual allegations in the complaint. Accepting plaintiffs' allegations as true, Vander Sanden has not demonstrated he is entitled to dismissal of the claims against him based on absolute immunity. He offers no other grounds for dismissal.

### B. *Claims Against Linn County*

Defendant Linn County argues all claims should be dismissed against it because it is a municipality that is not subject to civil rights liability for employee wrongdoing under a theory of respondeat superior. Doc. No. 8-1 at 5. It notes that a municipality's liability is limited to cases of affirmative municipal wrongdoing or illegal action pursuant to a policy, practice or custom. *Id.* It contends plaintiffs' claims that Linn County (1) had a policy "allowing" Vander Sanden's method of approving charges and (2) should have had a policy "preventing" Vander Sanden's method of approving criminal charges are contrary to Iowa law and the Iowa Rules of Professional Conduct. *Id.* at 5-6. Moreover, it argues that any policies applicable to Vander Sanden would be exclusive to the Linn County Attorney's Office and such policies would not be created or controlled by Linn County or its board of supervisors. *Id.* at 6. It notes that Vander Sanden is an autonomous, elected official for Linn County and not a Linn County employee. *Id.* Its

board of supervisors has no supervisory authority over the Linn County Attorney's Office and cannot set policies, agenda or trainings for Vander Sanden's office. *Id.*

Plaintiffs acknowledge that under section 1983, a municipality may be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Doc. No. 10 at 3 (citing *Monell v. City of New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). Plaintiffs argue they have sufficiently pled that Vander Sanden was acting pursuant to a policy that encouraged the county attorney to, under oath, recklessly swear to the truth of criminal complaints without making any effort to determine the truth of the factual allegations contained in the affidavit. *Id.* at 4-5. They contend Vander Sanden was acting as the final decision maker for the county in enforcing the law within the county. *Id.* at 5 (citing *Jane Doe A by and through Jane Doe B v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting in turn *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Plaintiffs compare this case to *Pembaur* in which the Supreme Court recognized that a municipality could be held liable through an official's unlawful action if that official possessed final policymaking authority. *Pembaur*, 475 U.S. at 483 ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). Plaintiffs argue Vander Sanden had authority to set the particular policy of personally attesting under oath that probable cause exists for an arrest. Doc. No. 10 at 7.

As the parties acknowledge, it is well established that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). The "first inquiry in any case alleging

10

municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). In other words, "the plaintiff must prove that the policy was the 'moving force' behind a constitutional violation." *Id.* (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "To prove the existence of a policy, a plaintiff must point to 'an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Id.* (quoting *Mettler*, 165 F.3d at 1204). "An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business." *Dean v. Cnty. of Gage, Neb.*, 807 F.3d 931, 940-41 (8th Cir. 2015) (quoting *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992)).

State law determines whether an individual has final policymaking authority. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). The court should consult two sources to identify the final policymaker: "(1) 'state and local positive law' and (2) state and local 'custom or usage having the force of law.'" *Id.* at 1215. Once it is determined that an official has final policymaking authority, it is up to a jury to determine whether the official's decision "caused the deprivation of rights at issue by policies which affirmatively command that it occur." *Dean*, 807 F.3d at 940 (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Plaintiffs have alleged the following with regard to this issue:

59. At the time that Vander Sanden swore to the truth of the statements made in the complaints against Darling and Massingham, he did so as part of a policy (informal or formal), standard procedure, or standard practice of Linn County to recklessly swear, under oath, to the truth of criminal complaints without first making any an effort to determine the truth of the factual allegations made in said complaints.

> 63. Defendant Linn County, Iowa, had the power to prevent or aid in the prevention of Defendants Boecker and Vander Sanden's acts in obtaining the arrest warrants for Darling and Massingham as heretofore alleged and could have done so using reasonable diligence, but knowingly failed or refused to do so. If Linn County had a policy in effect that did not simply allow its prosecutors to adopt and ratify statements made by law enforcement officers, regardless of whether or not they were true, no arrests or prosecution of Darling and Massingham would have occurred.

Doc. No. 1 at 12-13. Both parties cite Iowa Code Chapter 331 as establishing the duties of a county attorney. Plaintiffs note that Iowa Code § 331.756 (the "home rule" provision) delegates power from the Iowa legislature to sub-units of governments, including counties and municipalities. They contend each county attorney has the inherent power to set policy within the county for carrying out their law enforcement duties. Doc. No. 10 at 5. Linn County argues that even if the alleged informal policy existed, it would be Vander Sanden's alone and not Linn County's.

Iowa Code § 331.301 provides that: "A county shall substantially comply with a procedure established by a state law for exercising a county power unless a state law provides otherwise. If a procedure is not established by state law, a county may determine its own procedure for exercising power." The duties of the county attorney are outlined in Iowa Code § 331.756. One of those duties is: "Diligently enforce or cause to be enforced in the county, state laws and county ordinances, violations of which may be commenced or prosecuted in the name of the state, county, or as county attorney, except as otherwise provided." Iowa Code § 331.756(1). Iowa Code § 804.1 outlines the procedure for commencing a criminal proceeding by way of a complaint. It states:

> A criminal proceeding may be commenced by the filing of a complaint before a magistrate. When such complaint is made, charging the commission of some designated public offense in which such magistrate has jurisdiction, and it appears from the complaint or from affidavits filed with it that there is probable cause to believe an offense has been committed and a designated person has committed it, the magistrate shall, except as otherwise provided, issue a warrant for the arrest of such person.

Iowa Code § 804.1(1). The parties have not cited any statute or other authority providing who may sign a complaint swearing to the truthfulness of the statements therein. Therefore, it appears this decision falls under the discretion of the county attorney. *See* Iowa Code § 331.301 ("If a procedure is not established by state law, a county may determine its own procedure for exercising power.").

Likewise, the parties have not cited any law regarding whether the county attorney has final policymaking[2] authority for the county. Linn County argues that the county attorney essentially stands alone as an autonomous individual apart from the county itself because it is an elected position. It notes the county attorney is not a county employee, was not hired by the Linn County board of supervisors, cannot be terminated or disciplined by the board and the board has no supervisory authority over the county attorney.

In *Dean v. Cnty. of Gage, Neb.*, the Eighth Circuit considered whether a county sheriff had final policymaking authority in the area of law enforcement investigations and

---

[2] While plaintiffs argue Vander Sanden has final decision-making authority, it is final *policymaking* authority that matters here, as discussed by the Court in *Pembaur*:

> the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.

*Pembaur*, 475 U.S. at 483, n.12 (emphasis in original).

arrest. *Dean v. Cnty. of Gage, Neb.*, 807 F.3d 931, 941-42 (8th Cir. 2015). In reviewing Nebraska law, the court described the duties of the sheriff and noted that there did not appear to be any statute giving any entity supervisory authority over the sheriff or requiring the sheriff to answer to any superior. *Id.* at 941. It compared the case to *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 784 (1997), in which the Court concluded Alabama sheriffs were state policymakers as opposed to county policymakers based on: (1) the Alabama constitution listing sheriffs as members of the state executive branch; (2) "authority to impeach sheriffs was moved from the county courts to the State Supreme Court," and (3) the Alabama Supreme Court had held that tort claims brought against sheriffs based on their official acts constituted suits against the state, not the county. *Id.* at 942 (quoting *McMillian*, 520 U.S.at 788-89).

The Eighth Circuit further noted that under Nebraska law, sheriffs were not listed as members of the executive branch but were identified as "county officers" under statute. Nebraska district courts also had authority to remove county officers (including sheriffs) and the Nebraska Supreme Court had held a county liable for the negligent and intentional torts of its sheriff. *Id.* Finally, it noted the sheriff's salary was set by the county board, the county provided the sheriff's office with equipment and the registered voters elect the county sheriff and may recall the sheriff from office. *Id.* (citing various state statutes). While some statutes showed state influence, the court found that the sheriff represents the county in the area of law enforcement investigations and arrest. *Id.* It concluded a jury should decide whether the decisions by the sheriff constituted county policy that caused the alleged deprivation of rights. *Id.* at 943.[3]

---

[3] The Eighth Circuit has emphasized that it "[i]t is 'the trial judge' – not the jury – who 'must identify those officials . . . who speak with final policymaking authority for the local government." *Atkinson*, 709 F.3d at 1215 (quoting *Jett*, 491 U.S. at 737). "Only after the judge identifies an official as a final policymaker is it appropriate 'for the jury to determine whether [that official's] decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur.'" *Id.* (quoting *Angarita*, 981 F.2d at 1547) (internal quotations omitted)).

14

Here, the question is not whether the county attorney is a state policymaker or a county policymaker, but whether the county attorney can make policy for the county or is limited to only his office. Nonetheless, some of the same factors are relevant. The county attorney is identified under Iowa Code Chapter 331 as a "county officer," along with the county auditor, county treasurer, county recorder, county sheriff and county medical examiner. A county attorney may be removed from office by the district court. *See* Iowa Code § 66.1A ("Any appointive or elective officer, except such as may be removed only by impeachment, holding any public office in the state or in any division or municipality thereof, may be removed from office by the district court for any of the following reasons . . . ."). The county board of supervisors determines whether the county attorney is a full-time or part-time county officer. Iowa Code § 331.752. The board of supervisors may appoint an attorney to act as county attorney in the event of absence, sickness or disability of the county attorney and assistant county attorneys. Iowa Code § 331.754. The county attorney (along with other county officers) is permitted to "appoint, with approval of the board, one or more deputies, assistants, or clerks for whose acts the principal officer is responsible." Iowa Code § 331.903. The annual salary of assistant county attorneys is determined by the county attorney within the budget set for the county attorney's office by the board. *See* Iowa Code § 331.904. The annual compensation of the county attorney (and other county officers) is recommended to the county board of supervisors by the county compensation board. *See* Iowa Code § 331.907. The county attorney may appear for the state and the county in all cases and proceedings in the courts of the county to which the state or the county is a party. Iowa Code § 331.756.

I find that under Iowa law, Vander Sanden has final policymaking authority as it pertains to the filing of a criminal complaint, including the issue of who signs the complaint for a violation that the county attorney's office intends to prosecute. The county attorney is tasked with diligently enforcing or causing to be enforced state laws

and county ordinances. Iowa Code § 331.756(1). "If a procedure is not established by state law, a county may determine its own procedure for exercising power." Iowa Code § 331.301. Given that there are no statutory or other rules the parties have pointed to regarding the requirements of who may sign a criminal complaint, it falls within Vander Sanden's discretion to establish policy that the county will use in bringing charges pursuant to a criminal complaint.

Because Vander Sanden has policymaking authority as to this aspect of county action, any unconstitutional policy adopted by Vander Sanden as the county attorney would be sufficient to hold the county liable. *See Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy[,] . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Of course, it will be up to a jury to determine whether Vander Sanden's "decisions have caused the deprivation of rights at issue by the alleged policies which affirmatively command that it occur." *Atkinson*, 709 F.3d at 1215.

## V. CONCLUSION

For the reasons stated herein, the motion (Doc. No. 8) to dismiss by defendants Linn County, Iowa, and Jerry A. Vander Sanden is **denied**.

**IT IS SO ORDERED.**

**DATED** this 21st day of October, 2019.

_____
Leonard T. Strand, Chief Judge