# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

| | |
|---|---|
| BRIAN HUTCHCROFT-DARLING,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JUSTIN BOECKER; JERRY A.<br>VANDER SANDEN; CITY OF CEDAR<br>RAPIDS; and LINN COUNTY, IOWA;<br><br>　　　　　Defendants. | No. C19-0011-LTS<br><br>**MEMORANDUM OPINION AND<br>ORDER ON DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

———————————

## I.    INTRODUCTION

This case is before me on a motion (Doc. No. 37) for summary judgment by defendants Linn County and Linn County Attorney Jerry Vander Sanden (the county defendants) and a motion (Doc. No. 38) for summary judgment by defendants City of Cedar Rapids and Officer Justin Boecker (the city defendants).  Plaintiff Brian Hutchcroft-Darling has filed resistances (Doc. Nos. 45, 50) and the defendants have filed replies (Doc. Nos. 55, 56).  Oral argument is unnecessary.  *See* Local Rule 7(c).

## II.    PROCEDURAL HISTORY

Plaintiffs Darling and Frank Massingham[1] filed this action pursuant to 42 U.S.C. § 1983 on February 1, 2019, alleging the following claims:

- Count I - Violation of Clearly Established Civil Rights Guaranteed by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 – False Arrest/Arrest Without Probable Cause against Defendants Boecker and Vander Sanden in their individual

---

[1] The parties have since stipulated to Massingham's dismissal with prejudice.  *See* Doc. No. 27.

and official capacities and Cedar Rapids and Linn County

- Count II - False Arrest Claim (Common Law) – Against Defendants Boecker, Vander Sanden including conspiracy and respondeat superior liability against Cedar Rapids and Linn County, Iowa

- Count III - Malicious Prosecution Claim – Against Defendants Boecker, Vander Sanden including conspiracy and respondeat superior liability against Cedar Rapids and Linn County, Iowa

- Count IV – False Reports to or Communications With Public Safety Entities (Iowa Code § 718.6) – Against Defendant Boecker and respondeat superior liability against Cedar Rapids.

*Id.* at 12-18. The county defendants filed a motion (Doc. No. 8) to dismiss all claims against them. I denied the motion on October 21, 2019. *See* Doc. No. 25. Both sets of defendants filed answers alleging various affirmative defenses, *see* Doc. Nos. 9, 26, and now move for summary judgment on all claims.

## III. RELEVANT FACTS

The following facts are undisputed except where noted otherwise:

Darling owns Hutch's Properties, LLC. In 2017, Andrea Bowlay-Williams (Bowlay) was a tenant of Hutch's Properties at 30th Street Drive, SE in Cedar Rapids, Iowa. She moved out on September 5, 2017. Doc. No. 45 at 1. Bowlay left a washer and dryer in the basement of the apartment building. It is disputed whether she had permission to do so, but Darling acknowledges that Bowlay told Massingham (an employee of Hutch's Properties) she was going to leave her washer and dryer for a couple days with plans to sell them to someone else and would be back to get them. *See* Doc. No. 37-3 at 19. Darling had no objection to that arrangement because she had three days to move out. *Id.*

2

Bowlay later reported to police that her washer and dryer were missing. *See* Doc. No. 55-1 at 1. On September 17, 2017, Boecker[2] was dispatched to the residence to investigate. The city defendants state that Boecker learned Darling and Bowlay were the only parties with a key to the property and that a key was necessary in order to gain access to the washer and dryer.[3] They also state that Boecker found Bowlay to be a credible witness. Doc. No. 38-2 at 2. Darling argues Boecker's subjective belief is irrelevant. *See* Doc. No. 50 at 3. Bowlay showed Boecker an invoice addressed to her for a washer and dryer for the total price of $1,399.99. Doc. No. 38-2 at 2. The city defendants state Boecker contacted the Linn County Sheriff's Office and confirmed Bowlay had not been evicted from the property. Doc. No. 38-2 at 3. Darling denies this, stating that Boecker contacted the Linn County Sheriff's Office to determine whether Darling's alleged statement about serving eviction paperwork was a lie. Doc. No. 50 at 3. In any event, the parties agree that Bowlay was not evicted from the residence.

Boecker spoke to Massingham by phone who informed him he was aware Bowlay was going to leave her washer and dryer at the property for a couple of days after she moved out. Doc. No. 38-2 at 3. Darling disputes that Massingham agreed to this arrangement. Doc. No. 50 at 3. Massingham denied taking the washer and dryer from the property. Boecker also spoke to Darling by phone, who admitted he was aware that Bowlay was leaving her washer and dryer at the property for a couple of days after she moved out. He denied taking anything from the property. *Id.* Boecker also spoke with Tanor Jimmison, Lisa Morgan, Jason Rose, Marlin Knox and Whitney Lunn. Doc. No. 38-2 at 3-4.

---

[2] At all relevant times, Boecker was a sworn law enforcement officer employed by the Cedar Rapids Police Department. *See* Doc. No. 38-2 at 1.

[3] Darling disputes this statement noting that it is based on Boecker's affidavit, is inadmissible hearsay, contradicts Boecker's police report and was not used in the probable cause determination to bring charges against Darling. Doc. No. 50 at 2.

The substance of what the witnesses told Boecker is disputed. Defendants rely primarily on Boecker's police reports. Darling relies primarily on affidavits and deposition testimony obtained later from the witnesses. Defendants argue for various reasons that the witness affidavits and deposition testimony are not credible, but that is an issue for a fact-finder. *See United States v. Dico, Inc.*, 136 F.3d 572, 579 (8th Cir. 1998) ("Assessing the credibility of witnesses and evaluating the weight to assign to their testimony is the job of the fact-finder, and is not a function for the court on a motion for summary judgment."). I find it unnecessary to detail every disputed fact here. Generally speaking, Boecker reported that various witnesses saw Darling and Massingham at the property with Darling's white van and saw or heard them removing Bowlay's washer and dryer from the apartment. The witnesses later testified or provided affidavits denying they had made such statements to Boecker and affirmatively stating they did not see anything. It is undisputed that prior to Boecker's investigation at the property on September 17, 2017, he did not have contact with Darling, Massingham or Bowlay or have any knowledge of these individuals. Doc. No. 38-2 at 5.

Boecker submitted his police reports and written request for an arrest warrant to the Linn County Attorney's Office for review. *See* Doc. No. 37-3 at 24-32 (consisting of Boecker's police reports and complaints and affidavits submitted to the County Attorney). This is the only communication between Boecker and Vander Sanden prior to charges being filed. Doc. No. 38-2 at 4. Vander Sanden evaluated the written report and drafted charging documents to be filed in Iowa District Court charging Darling and Massingham with second degree theft in violation of Iowa Code § 714.2(2). Doc. No. 45 at 2-3. The county defendants contend the charging documents were criminal complaints that relied upon the probable cause information Vander Sanden received from Boecker's police report. Doc. No. 37-2 at 2. Darling contends Vander Sanden made some changes in preparing the sworn criminal complaint that are inconsistent with the police reports. Doc. No. 45 at 3. For instance, the police reports state that witnesses

saw the theft on September 5, 2017. The complaint states witnesses observed Darling steal the washer and dryer on September 6, 2017. *Id.*

The complaint signed by Vander Sanden states:

> I, the undersigned, complainant, being first duly sworn on oath, depose and I believe the above-named defendant committed the above-named public offense based upon the following facts: Witnesses observed the defendants steal a washer and dryer valued in excess of $1,000.00 belonging to Andrea Bowlay-Williams at 339 30th Street Drive, S.E., Cedar Rapids, Iowa.

Doc. No. 37-2 at 2. Vander Sanden did not independently investigate the facts and circumstances alleged by Boecker. *Id.* Once the criminal complaint was filed, Darling was criminally charged in case number FECR 123990, for which a judge authorized an arrest warrant.

Darling's defense counsel deposed some of the witnesses in the criminal case on November 28, 2017. On February 28, 2018, Vander Sanden filed a motion to dismiss the charges. *Id.* at 3.

## IV.    ANALYSIS

### A.    *Summary Judgment Standards*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical"

5

under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light

6

most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## B.    Claims Against County Defendants

Darling does not resist the dismissal of the malicious prosecution claim and the conspiracy claim under § 1983. *See* Doc. No. 47 at 3. As such, those claims against the county defendants are dismissed. I will address the county defendants' arguments as to the remaining claims below.

### 1.    Absolute Immunity as to Defendant Vander Sanden

Defendants argue Vander Sanden is entitled to absolute immunity because "[s]igning and filing a complaint or information, including making the requisite oath or affirmation, are acts 'intimately associated with the judicial phase of the criminal process' and functions 'to which the reasons for absolute immunity apply with full force.'" Doc. No. 37-1 at 6 (quoting *Burr v. City of Cedar Rapids*, 286 N.W.2d 393, 396 (Iowa 1979)). I considered this issue in ruling on the county defendants' motion to dismiss. I noted that the sworn complaints were not in the record at that time and, without them, I could not determine what Vander Sanden was swearing to when he signed them. Doc. No. 25 at 8. Based on the allegations in Darling's complaint, I concluded Vander Sanden's alleged sworn statements were closer to a witness function than an advocate function that would entitle him to absolute immunity. *Id.* at 8-9.

Darling argues I should not consider Vander Sanden's absolute immunity argument now because the county defendants did not affirmatively plead absolute immunity in their

answer.[4] The county defendants respond that Darling had adequate notice of this argument from the motion to dismiss and did not suffer unfair surprise in defendants' raising it on summary judgment.

Absolute immunity is an affirmative defense. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Rule 8(c) requires affirmative defenses to be pleaded in a party's answer and failure to plead an affirmative defense generally results in a waiver of that defense. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). The purpose of the pleading requirement is to give the opposing party notice of the affirmative defense and the opportunity to rebut it. *First Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 (8th Cir. 2007). Therefore, the Eighth Circuit has held that "[w]hen an affirmative defense 'is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not fatal. *Id.* (quoting *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 n.9 (8th Cir. 1990)).

I find that defendants' absolute immunity argument does not present any unfair surprise to Darling, as the parties previously litigated this issue during arguments on the motion to dismiss. *See* Doc. No. 25. While defendants should have pleaded this affirmative defense, I will consider this argument due to the lack of unfair surprise.

Relying on the language of the criminal complaint, defendants argue this case can be distinguished from *Kalina v. Fletcher*, 522 U.S. 118 (1997), because Vander Sanden did not swear to the truth of statements made by law enforcement. They contend Vander Sanden's statement was based on his belief that if true, the facts alleged indicated probable cause to file the criminal charge against Darling. Doc. No. 37-1 at 6.

---

[4] The county defendants attempted to amend and substitute their answer the day before filing their summary judgment motion to add this defense, but the motion to amend was denied. *See* Doc. No. 39.

Darling argues Vander Sanden specifically identifies himself as the complaining witness in the complaint and notes he conducted no investigation of his own or spoke with any witnesses prior to drafting the complaint. Doc. No. 47 at 7.

The complaint states in relevant part:

> THE DEFENDANT is accused of the crime of THEFT IN THE SECOND DEGREE, in violation of Section(s) 714.1(1), 714.2(2), Code of Iowa. For that the said defendant did on or about September 6, 2017 in Linn County and the State of Iowa,
>
> take possession or control of property (or merchandise) valued more than $1,000 but less than $10,000 from Andrea Bowlay-Williams, 339 30th Street Drive SE, Cedar Rapids, Linn County, Iowa, with the intent to permanently deprive the owner of the property.
>
> I, the undersigned, complainant, being first duly sworn on oath, depose and I believe the above-named defendant committed the above-named public offense based upon the following facts:
>
> Witnesses observed the defendants steal a washer and dryer valued in excess of $1000.00 belonging to Andrea Bowlay-Williams at 339 30th Street Drive S.E., Cedar Rapids, Iowa.

Doc. No. 37-3 at 41. As noted above, Vander Sanden signed the complaint.

Prosecutors are entitled to absolute immunity from liability in a suit for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case"); *see also Kalina*, 522 U.S. at 128-29 (prosecutors have absolute immunity for conduct in the preparation and filing of a motion for an arrest warrant unless he acts as a witness); *Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir. 1987) ("The decision of a prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction."). Whether prosecutorial conduct is "intimately associated

with the judicial phase of the criminal process" requires "a focus[] on the conduct for which immunity is claimed, not the harm that the conduct may have caused or the question whether it was lawful." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). In *Buckley*, the Supreme Court divided the functions of the prosecutor as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973), *cert. denied* 415 U.S. 917 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." *Id.* at 608-609.

509 U.S. at 273-74. Importantly, the prosecutor's role is evaluated from the time it is performed. *Id.* at 276 ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation for a possible trial.'"). When accepting Darling's allegations as true for purposes of a Rule 12(b)(6) motion, I found that Vander Sanden's sworn statements appeared closer to a witness function, as described in *Kalina*, rather than an advocate function entitling him to absolute immunity. Doc. No. 25 at 8.

Having now reviewed the criminal complaint against Darling, I conclude that the opposite is true. Vander Sanden was not swearing to the accuracy of the facts or vouching for their truthfulness but was swearing that the facts, as stated, were sufficient to believe Darling committed the offense of second degree theft. *See Kalina*, 522 U.S. at 509 (concluding that prosecutor's determination that the evidence was sufficiently strong to justify a probable-cause finding, the decision to file charges and the selection of particular facts to include in the certification to provide the evidentiary support for the finding of

probable cause involved the exercise of professional judgment); *Buckley*, 509 U.S. at 273 (concluding the actions of a prosecutor entitled to absolute immunity "must include the professional evaluation of the evidence assembled by the police . . . ."); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1267 (8th Cir. 1996) ("As county attorney, Jansen was under a duty to review [evidence] as part of his role as advocate for the state."); *Saterdalen v. Spencer*, 725 F.3d 838, 842-43 (8th Cir. 2013) (prosecutor entitled to absolute immunity because his acts in reviewing and approving the complaint against plaintiff were taken to initiate the criminal prosecution); *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government."). This action constitutes advocacy on behalf of the government and entitles Vander Sanden to absolute immunity on the claims against him.[5]

### 2.      *Liability as to Linn County*

The county's liability is based on an alleged policy in which the county attorney "recklessly swear[s], under oath, to the truth of criminal complaints without first making any an [sic] effort to determine the truth of the factual allegations made in said complaints." Doc. No. 1 at 12-13. Defendants argue the claims against Linn County should be dismissed because Darling has not produced evidence from which a jury could reasonably find the existence of a relevant municipal custom that was the moving force or cause of Darling's arrest. *See* Doc. No. 37-1 at 18. Darling argues the alleged policy is not the review of police reports but allowing the county attorney to act as a complaining witness and swear to the truth of facts of which he has no personal knowledge and which may be fabricated. *See* Doc. No. 47 at 25.

---

[5] Even if Vander Sanden was not entitled to absolute immunity, I find he would be entitled to qualified immunity for the reasons stated by defendants. *See* Doc. No. 37-1 at 7-14.

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee." *Russell v. Hennepin Cnty.*, 420 F.3d 841, 846 (8th Cir. 2005). *See also Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . municipal liability."); *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) ("Because we conclude that Officer Hinman did not violate Malone's constitutional rights, there can be no § 1983 or *Monell* liability on the part of Chief Thomas and the City."); *Brodnicki*, 75 F.3d at 1266 ("since the officers did not violate Brodnicki's constitutional rights, it follows that Brodnicki's claim against the City of Omaha under a theory of inadequate training or municipal custom lacks merit.').

The alleged unconstitutional actions by Vander Sanden are that he swore to the facts contained in Boecker's police report as being true and correct without having done his own investigation (the alleged policy at issue) and that, as a result, Darling was arrested and charged without probable cause. This is also the basis of Darling's false arrest claim (Count II). I will discuss these claims together as the alleged lack of probable cause is the basis for both claims. The elements of a false arrest claim are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint. *Thomas v. Marion Cnty.*, 652 N.W.2d 183, 186 (Iowa 2002). "A false arrest case involving the issue of probable cause turns on what the officer knew at the time of arrest, not what he learned later." *Children v. Burton*, 331 N.W.2d 673, 678 (Iowa 1983). "Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990). "Facts that occur or come to light subsequent to the arrest are irrelevant to

a determination of whether probable cause existed at the time of arrest." *Id.* at 680. "If pertinent facts relating to the existence of probable cause are in dispute, the existence of probable cause is a jury question." *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 470 (Iowa 1984) (citing *Children*, 331 N.W.2d at 681).

Here, probable cause is based on what Vander Sanden knew at the time he filed the complaint. It is undisputed that Vander Sanden's knowledge is limited to the information provided in Boecker's police reports. That information consists of the following as reported by Boecker:

- Boecker was dispatched to 339 30th Street Drive SE with regard to a "theft of a washer and dryer by a landlord."

- Boecker spoke to Bowlay who reported that she had moved out of her apartment on September 5 and told Massingham that she was going to leave her Whirlpool washer and dryer there for a couple days because she was going to sell them to someone else and Massingham acknowledged that was ok.

- Bowlay showed Boecker an invoice addressed to her for a washer and dryer with a total price of $1399.99.

- Boecker spoke to tenants at the apartment complex next door. Jimmison stated that on the day Bowlay moved out, he observed Darling and Massingham go into the apartment and remove a "Whirlpool" washer and dryer.

- Boecker spoke to Morgan who stated she also observed Darling and Massingham remove Bowlay's washer and dryer out of the apartment after she left. She knew that Bowlay still had a key to the apartment, rights to the apartment, that Bowlay was leaving her washer and dryer there because she was selling them to someone else and that she had told Massingham and Darling this. She waited until she saw Bowlay again to tell her that the items had been taken.

- Boecker also spoke to Rose who was identified as an acquaintance of the individuals at 337 30th Street Drive SE. He stated that on "the day in question" he observed two individuals that he believed were landlords of the apartment complex go into Bowlay's apartment and remove a washer and dryer.

- Boecker reported Morgan told him to contact Knox (Morgan's fiancé) who also saw Darling and Massingham remove a washer and dryer from the house. Boecker was not able to get a hold of Knox.

- Boecker left Darling a message. Darling called Morgan on her phone and she handed the phone to Boecker. Boecker explained why he was at the apartment complex and Darling denied he had taken anything from the apartment. Darling said he remembered that Bowlay had told Massingham about leaving the washer and dryer but that he did not move anything.

- Boecker contacted the Linn County Sheriff's Office to see if Bowlay had been served with any type of eviction notice and there was no such record.

- Boecker spoke with Lunn who lives on the same street as Bowlay and stated she remembered when Bowlay moved out and that Darling was there with Massingham and that a white van was pulled into the driveway of the apartment complex Bowlay lived at. She did not see anything removed. She told Boecker to "be wery" [sic] of the subjects at 333 30th Street Drive because they were good friends with Darling and Massingham and would likely try to accuse somebody else of wrongdoing so those two would not get in trouble.

- An individual came out of the 333 30th Street address and approached Boecker at his squad car. This individual was "obviously" on the phone with one of the landlords and Boecker could hear him talking about the incident. The individual told Boecker Darling had his van parked on the street where his squad car was, which was 300 feet up from Bowlay's residence and remained there until Bowlay was served eviction paperwork and never went up to the house. Boecker determined this was a lie based on Lunn's warning, other witness statements and his contact with the Linn County's Sheriff Office regarding an eviction notice.

- Boecker then spoke with Knox who lives at 337 30th Street Drive SE. He stated that "two Wednesday's [sic] ago" Darling had arrived and removed something from Bowlay's address. He spoke with Darling that day regarding rent and heard Darling's van being pulled into the apartment complex driveway and Darling and Massingham going into Bowlay's apartment and that he "heard" them "dragging heavy things up the stairs and load them into the van" but he never saw what it was that they were loading.

- Boecker spoke with Massingham who stated he went through the apartment with Bowlay and that he remembered Bowlay telling him she was going to leave the washer and dryer in the apartment for a couple of days. Massingham denied

> taking anything out of the apartment and questioned the reliability of the witnesses stating they had been having "drug issues" in the area of those apartments.

Doc. No. 37-3 at 24-28.

Darling has presented no evidence from which a reasonable juror could conclude that Vander Sanden should not have believed the information Boecker provided to him or that Vander Sanden had reason to believe Boecker was not providing truthful information in his police reports. Indeed, it is undisputed that the only communication between Boecker and Vander Sanden prior to the charges being filed was the submission of the police reports to the County Attorney's office. The undisputed facts establish that, from Vander Sanden's perspective, there was probable cause to charge Darling with theft in the second degree.[6] As such, Darling's false arrest claim (Count II) against the county fails as a matter of law. Because Darling has not established a factual issue regarding a constitutional violation by Vander Sanden, his § 1983 claim (Count I) against the county also fails. Summary judgment will be granted as to these claims.

### C.    Claims Against City Defendants

Darling does not resist dismissal of the § 1983 claims against the City of Cedar Rapids or his conspiracy claim under § 1983 against Boecker. *See* Doc. No. 50-1 at 2. I will address the remaining claims below.

### 1.    Claims Against Boecker in His Official Capacity

The city defendants argue that Darling's claims against Boecker in his official capacity are duplicative of his claims against the city. *See Parrish v. Ball*, 594 F.3d 993,

---

[6] A person commits theft under Iowa law if he "[t]akes possession of control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." Iowa Code § 714.1.

997 (8th Cir. 2010) ("[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). They argue that Darling's claims against Boecker in his official capacity should be dismissed. Darling did not respond to this argument. I agree that the § 1983 claims against Boecker in his official capacity are duplicative and, like those against the city, must be dismissed. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (dismissing § 1983 claims against public officials in their official capacities as redundant to § 1983 claims made against the governmental entity).

### 2. *Section 1983 Claim for False Arrest/Arrest Without Probable Cause Against Boecker*

Defendants argue this claim fails because the undisputed facts show there was probable cause for Darling's arrest.[7] This probable cause analysis is different than the probable cause analysis that applied to Vander Sanden because Darling alleges that Boecker knowingly provided false evidence in his reports that was used to establish probable cause. An allegation that an officer lied in an affidavit that served as the basis for an arrest warrant is actionable under § 1983. *See Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1411-12 (8th Cir. 1994).

The city defendants "acknowledge that Plaintiff and City Defendants have a dispute as to exactly what the Witnesses told, or did not tell, Boecker during his investigation on September 17, 2017." Doc. No. 38-1 at 5. They contend these disputed facts are not material to Darling's claims because there was probable cause for the arrest "regardless of who is right regarding the particular disputed facts." *Id.* They note that officers are generally entitled to rely on the veracity of information provided by the victim of a crime and that law enforcement is entitled to "substantial latitude in interpreting and

---

[7] The city defendants argue throughout their brief that Darling has failed to "state a claim." Given that they have filed a motion for summary judgment, I will analyze the claims based on Rule 56 rather than Rule 12(b)(6).

drawing inferences from factual circumstances." *Id.* (citing *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816-17 (8th Cir. 2010)). The city defendants contend that the information provided by Bowlay is sufficient to establish probable cause without the additional disputed information provided by other witnesses. I disagree. First, some of the information allegedly provided by Bowlay is disputed. *See* Doc. No. 50 at 2-3. Darling also notes that defendants rely on an affidavit from Bowlay regarding what she told Boecker. They contend this should not be considered in determining whether there was probable cause because it was created after-the-fact and is inadmissible hearsay. *Id.* I agree that the factual dispute of what Bowlay told Boecker is problematic to a probable cause finding when viewing the facts in the light most favorable to Darling. Moreover, Bowlay allegedly provided little information tying Darling to the missing washer and dryer. The closest allegation was that he was the only other person to have a key to where the washer and dryer were kept. Given that he is the landlord to the property, that alone is hardly sufficient to tie him to the alleged theft of the washer and dryer. Resolving factual disputes concerning the disputed information from Bowlay and other witnesses is necessary to a probable cause finding.

Boecker also argues he is also entitled to summary judgment on the § 1983 claim based on qualified immunity. "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mallak v. City of Baxter*, 823 F.3d 441, 445 (8th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a defendant is entitled to qualified immunity, courts ask (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, the defendant is entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'ers*, 731 F.3d 784, 791 (8th Cir. 2013).

When construing the facts in the light most favorable to Darling, such facts are sufficient to establish violation of a constitutional right. "The Fourth Amendment right to be free from unreasonable searches and seizures requires that arrests be based on probable cause." *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1310 (8th Cir. 2014) (citing *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999)). When a "police officer deliberately or recklessly makes false statements to demonstrate probable cause for an arrest warrant, the warrant may be invalidated under *Franks v. Delaware*, 438 U.S. 154 (1978)." *Id.* "To establish a *Franks* violation, the plaintiff must prove '1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause.'" *Id.* (quoting *United States v. Box*, 193 F.3d 1032, 1034-35 (8th Cir. 1999)). The facts, when viewed in the light most favorable to Darling, could establish that Boecker intentionally and knowingly, or with reckless disregard to the truth, included false statements in the police reports and affidavits and that the remaining information is insufficient to provide probable cause.

Darling has produced evidence in the form of deposition testimony and affidavits from the witnesses who allegedly provided the information contained in Boecker's reports. The deposition and affidavit evidence contradicts much of the evidence contained in Boecker's reports that would support a probable cause finding. *See* Doc. No. 45-2 at 58, 60-61, 64, 67-70, 74, 78-80, 82-84, 92, 94-97. A reasonable jury could find that Boecker falsified the information contained in the police reports to establish probable cause to support the arrest of Darling and Massingham. As noted above, the police reports do not establish probable cause without the alleged falsified information from Bowlay and witnesses, which is disputed. As such, I find that Boecker is not entitled to summary judgment on Count I based on qualified immunity.

### 3. *False Arrest*

The elements of a false arrest claim are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint. *Thomas*, 652 N.W.2d at 186. "If pertinent facts relating to the existence of probable cause are in dispute, the existence of probable cause is a jury question." *Kraft*, 359 N.W.2d at 470 (citing *Children*, 331 N.W.2d at 681). Probable cause is measured on what the officer knew at the time of arrest. *See Children*, 331 N.W.2d at 678.

The city defendants seek summary judgment based solely on the existence of probable cause and lawfulness of the arrest. *See* Doc. No. 38-1 at 10. Unlike Vander Sanden, there are disputed facts regarding what Boecker knew at the time of the arrest. Vander Sanden knew only what was contained in Boecker's reports. Boecker knew what witnesses told him and whether it matched what he included in his reports. Darling has submitted affidavits and deposition testimony from the witnesses stating that what they told Boecker is different than what he included in his reports. Viewing the facts in the light most favorable to Darling, a reasonable jury could conclude that Boecker knowingly provided false information in his police reports that was necessary to a probable cause finding and that the remaining information was insufficient to establish probable cause. Summary judgment on Count II is denied as to the city defendants.

### 4. *Malicious Prosecution*

Malicious prosecution requires proof of the following:

> (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff.

*Linn v. Montgomery*, 903 N.W.2d 337, 345 (Iowa 2017) (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990)). Boecker argues Darling's claim fails as a matter of law because he cannot prove the fourth element – want of probable cause. *See* Doc. No. 38-

1 at 11. He also argues Darling cannot prove actual malice, noting it is undisputed that Boecker never had contact with Darling, Massingham or Bowlay prior to his investigation on September 17, 2017. *Id.* at 12. He notes that none of the witnesses are able to articulate a reason for any ill will, hatred or wrongful motive by Boecker and many were unwilling to state that Boecker lied. *Id.*

Regardless of whether Darling has come forward with sufficient evidence to demonstrate a fact issue as to actual malice, I find that Boecker is not entitled to summary judgment Count III given that Darling has demonstrated a factual dispute as to whether there was probable cause. Boecker's motion as to Count III is denied.

### 5.    *False Reports*

Defendants argue that there is not a private civil cause of action for an alleged violation of Iowa Code § 718.6. *See* Doc. No. 38-1 at 13. Darling relies on *Hall v. Montgomery Ward & Co.* in which the Iowa Supreme Court stated "[c]ivil remedies may in all cases be enforced for injuries sustained by reason of public offenses." *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421 (Iowa 1977). Defendants concede that while "civil causes of action can, in certain circumstances be based on violations of criminal statutes," *see Huyser v. Lynch*, No. 11-1577, 2012 WL 6193387, at *2 (Iowa Ct. App. Dec. 12, 2012), Darling has provided no authority recognizing a civil cause of action based on Iowa Code § 718.6(1). The statute states:

> A person who reports or causes to be reported false information to a fire department, a law enforcement authority, or other public safety entity, knowing that the information is false, or who reports the alleged occurrence of a criminal act knowing the act did not occur, commits a simple misdemeanor, unless the alleged criminal act reported is a serious or aggravated misdemeanor or felony, in which case the person commits a serious misdemeanor.

Iowa Code § 718.6(1). Darling alleges that Boecker violated the statute by falsifying the contents of his report to include manufactured and false statements attributed to witnesses

and that he reported this false information to a law enforcement authority or other public safety entity knowing the information was false. *See* Doc. No. 1 at 17-18.

The Iowa Supreme Court has stated: "Not all statutory violations give rise to a private cause of action. A private statutory cause of action exists 'only when the statute, explicitly or implicitly, provides for such a cause of action." *Shumate v. Drake University*, 846 N.W.2d 503, 507 (Iowa 2014) (quoting *Mueller v. Wellmark, Inc.*, 818 N.W.2d 244, 253 (Iowa 2012)). "A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." *Id.* (quoting *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 296 (3d Cir. 2007)). If the statute does not expressly provide for a private cause of action, the court should determine if the right to sue is implicit in the statute. *Id.*

The Iowa Supreme Court employs a four-factor test for determining the legislature's intent. *Id.* at 510. Those factors are: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted, (2) legislative intent, either explicit or implicit, to create or deny a remedy, (3) whether a private cause of action is consistent with the underlying purpose of the statute and (4) whether the implication of a private cause of action will intrude into an area over which the federal government has exclusive jurisdiction or which has been delegated exclusively to a state administrative agency. *Id.* at 508 (citing *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 41-43 (Iowa 1982)). Iowa Code § 611.21 "allows a cause of action for violation of a criminal statute." *Heick v. Bacon*, 561 N.W.2d 45, 54 (Iowa 1997). However, this is limited to situations in which the plaintiff was "within the protection of the statute" and the plaintiff's harm "flow[ed] from the statutorily proscribed conduct." *Shumate*, 846 N.W.2d at 515-16 (quoting *Hall*, 252 N.W.2d at 424).

Darling has provided no authority, and little analysis, as to why Iowa Code § 718.6(1) gives him a private cause of action. Based on the four factors, I agree with defendants that it does not. The first factor – whether Darling is a member of the class

that the statute was enacted to protect – is neutral at best. The statute is found within Chapter 718 entitled "Offenses Against the Government." Other crimes within this chapter include "insurrection," "impersonating a public official," "willful disturbance," "harassment of public officers and employees" and "falsifying public documents." While all criminal statutes are enacted to protect the general public, this statute is also focused on protecting public officials and the authority of those officials. Nonetheless, as a member of the general public, the statute has some application to Darling.

With regard to the second factor of legislative intent, the statute provides that an individual who violates the statute commits a simple misdemeanor (at the lowest level) up to a serious misdemeanor (at the highest level). Iowa Code § 718.6. Nothing in the statute indicates the legislature intended any other remedy. The second factor weighs against recognizing a private cause of action.

With regard to the third factor – whether a private cause of action is consistent with the underlying purpose of the statute, I find it is not, especially under these circumstances in which Darling intends to hold a public official in violation of the statute. The purpose of the statute is to ensure that private citizens are truthfully reporting information to law enforcement. There are numerous other remedies for holding a law enforcement officer accountable for allegedly including false information in his or her police report. Darling is pursuing those remedies in this lawsuit. This factor also weighs against recognizing a private cause of action.

With regard to the fourth factor, a private cause of action under this statute could arguably intrude upon the authority that has been exclusively delegated to various state and local law enforcement agencies. Even if the fourth factor could be determined not to intrude upon their authority, I find that the other factors weigh against recognizing a private cause of action in § 718.6, especially under these circumstances involving a law enforcement authority allegedly providing false reports to another public safety entity. As such, I find that Count IV against the city defendants fails as a matter of law and will be dismissed.

## V.  CONCLUSION

For the reasons explained herein:

1.      The county defendants' motion (Doc. No. 37) for summary judgment is **granted**.  This action is hereby **dismissed** against defendants Vander Sanden and Linn County.

2.      The city defendants' motion (Doc. No. 38) is **granted in part** and **denied in part.**  It is **granted** as to Count IV and **denied** as to Counts I, II and III.

3.      As a result of this order, this case shall proceed to trial on Count I against Boecker, Count II against Boecker and the City of Cedar Rapids and Count III against Boecker.


**IT IS SO ORDERED.**

**DATED** this 28th day of May, 2020.


_____
Leonard T. Strand, Chief Judge